UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | 1:12-CR-149 M |
| | ) | |
| EDMOND PAOLUCCI | ) | |

_____

## MOTION FOR SENTENCE CONSIDERATION

     Now comes Edmond Paolucci, the Defendant in the above captioned matter, and moves this Honorable Court to impose a sentence that is sufficient but not greater than necessary in compliance with18 U.S.C. § 3553(a).  After considering the relevant facts surrounding this individual case and this individual defendant, the court should conclude that the advisory guidelines call for a sentence far longer than what is sufficient to comply with 18 U.S.C. § 3553(a).

     Mr. Paolucci asks the court to impose a sentence of one day to serve, to be followed by three years of supervised release, including special conditions that 1) the first six months of supervised release be served in home detention, and 2) 100 hours of community service per year of supervised release.  The proposed sentence adequately addresses society's relatively moderate need for punishment, the need for specific and general deterrence, and the mitigating facts and circumstances of Mr. Paolucci's life.

                                              Respectfully submitted
                                              Edmond Paolucci
                                              By his attorney,

                                              /s/ Olin Thompson
                                              Assistant Federal Defender
                                              10 Weybosset St., Ste. 300
                                              Providence, RI 02903
                                              (401) 528-4281
                                              FAX 528-4285
                                              olin_thompson@fd.org

## CERTIFICATION

      I hereby certify that a copy of the within was delivered by electronic notification to Heather McLoughlin United States Probation Officer, and Richard Myrus, Assistant United States Attorney, on March 29, 2013

                                               /s/ Olin Thompson

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| VS. | ) | 1:12-CR-149 M |
| | ) | |
| **EDMOND L. PAOLUCCI** | ) | |

MEMORANDUM IN SUPPORT OF REQUEST FOR SENTENCING
CONSIDERATION

Mr. Paolucci submits this memorandum to assist the court in determining a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of sentencing. 18 U.S.C. § 3553(a) (2005). Additionally, Mr. Paolucci submits this memorandum in support of his Motion for Sentencing Consideration advocating for a sentence outside of the suggested guideline range. The court is required to sentence a defendant below the advisory guideline range if such a sentence is sufficient to achieve the purposes of sentencing. *Id.* Mr. Paolucci seeks a sentence of one day of incarceration, to be followed by three years of supervised release including special conditions that 1) the first six months of supervised release be served in home detention, and 2) the defendant perform 100 hours of community service per year of supervised release.

The requested variant sentence is appropriate because, for this crime and this defendant, an alternative to actual imprisonment better satisfies the interests of the court, society, and Mr. Paolucci. The advisory guideline range recommends a sentence far more punitive than necessary given the unique circumstances of this case and this defendant. A sentence of non-incarceration is appropriate in this case given the nature of the crime as well as defendant's mental and physical illnesses. The requested sentence protects Mr. Paolucci from the hardships of federal prison while still subjecting him to some confinement and requiring him to repay his debt to society by requiring 300 hours of community service.

A.	General Sentencing Parameters

The court must impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing. 18 U.S.C. §3553(a). Those purposes include providing just punishment, creating general and specific deterrence, incapacitating the defendant, and rehabilitating the defendant. 18 U.S.C. §3553(a)(2). In order to effect these purposes the court must consider an array of general and specific items of relevant information. In addition to Mr. Paolucci's personal situation and background, *supra*, the court must consider the properly calculated advisory sentencing guideline, the need for restitution, and the various types of sentencing sanctions available. 18 U.S.C. § 3553(a)(4), (5), & (6). The court's considerations are also qualified by recent Supreme Court decisions interpreting the sentencing process under 18 U.S.C. § 3553(a).[1]

The sentencing judge is in the best position to accurately and efficiently determine the appropriate sentence in an individual case. Congress has charged the District Court, not the Sentencing Commission, with that duty. 18 U.S.C. §3553(a). Only the judge can assess the character and background of an individual. Only the judge can enforce the parsimony directive. Only the judge can look the defendant in the eye at sentencing. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). This court must determine the appropriate sentence, one that is sufficient but not greater than necessary, by incorporating all of the considerations under § 3553(a).

B.	The facts and Mr. Paolucci's background

The facts of this crime itself are summarized in the Prosecution Version contained in the PSR. PSR ¶8. Mr. Paolucci has never contested those facts. Mr. Paolucci served as a local distributor of anabolic steroids for a large international steroid ring. He distributed the steroids through the use of

---

[1] See, *Gall v. United States*, 552 U.S. 38 (2007) (non-guideline sentences not proportionally tethered to the guidelines); *Kimbrough v. United States*, 552 U.S. 85 (2007) (advisory guidelines not based on empirical data or past practice command less weight in sentencing process than § 3553(a) factors based in fact); *Rita v. United States*, 551 U.S. 338 (2007) (advisory guideline range not presumed reasonable); *United States v. Booker*, 543 U.S. 220 (2005). (rendering United States Sentencing Guidelines advisory).

2

internet bulletin boards dedicated to bodybuilding and the safe use of steroids. One feature of these boards is the constant emphasis by users on safety. Participants on these boards emphasize that no one should use steroids before they are 25, should not use them before having years of experience bodybuilding naturally, and should not be used as a substitute for hard work. Mr. Paolucci did his best to assure that no children ever received anabolic steroids, and was a proponent of the safe use of these steroids for the purposes of competitive bodybuilding. Notably, Mr. Paolucci himself previously used anabolic steroids in support of his own training for competitive bodybuilding. PSR ¶ 56.

The specifics of Mr. Paolucci's life are accurately summarized in the PSR. Mr. Paolucci's life is notable for his chaotic upbringing without any positive family dynamic and with no positive male role models, PSR ¶¶ 42-43, his poor physical health, PSR ¶¶ 47-50, and his very serious mental health issues, PSR ¶¶ 51-55. Each of these characteristics has its own unique impact on the court's sentencing determination.

For example, Mr. Paolucci's family upbringing is almost certainly responsible in some ways for his adult mental health issues. The PSR details how confusing young Edmond Paolucci's life must have been - where his father was married to another woman and Edmond wasn't even permitted to call his father by name. When he did see his father he suffered from verbal and physical abuse. No doubt this situation led to conflicts in Mr. Paolucci's identity as an adult, his sense of self-worth, and his ability to trust or relate to others.

Mr. Paolucci's complex mental health history also contributes both to the offense and the appropriate sentence. His history is examined in detail in the PSR. He has only been actively treating his mental illnesses for the past 12 years. During that time he has experienced some extremely serious breakdowns with potentially disastrous consequences. He has been given differing diagnoses and different combinations of various medications.

Mr. Paolucci is on disability as a result of his mental illness. This has left him with an income of less than $1,200 per month, with half of that going to his rent. PSR ¶ 59, ¶ 45. His need for additional income contributed to his decision to engage in this crime. Mr. Paolucci's upbringing and physical and mental illnesses also make him more likely to seek a living by working on the internet while holed up in his home. Selling anabolic steroids by mail and over the internet was an ideal (and he thought harmless) way for Mr. Paolucci to earn extra spending money while tolerating his illnesses.

C.   The advisory guideline

Although the court's sentencing calculation must begin with reference to the guidelines, the guidelines are not to be presumed by the court to suggest a reasonable sentence. *Rita*. "As far as the law is concerned, the judge could disregard the Guidelines . . . ." *Id* at 553. The probation officer has calculated an advisory guideline range of 33 to 41 months, based on an adjusted offense level of 19 and a criminal history category of II. That range offers no practical advice, however, because it 1) is the product of a guideline that is based neither on practical evidence nor national experience; 2) fails to take account of Mr. Paolucci's age, physical condition, and need for effective mental health treatment; 3) is far greater than necessary to promote the goals of sentencing in this case; and 4) ignores the fact that many goals of sentencing can be best served by a non-incarcerative sentence.

Prior to 1990, anabolic steroids were not categorized as a Schedule III substance and were not addressed in the sentencing guidelines at all. Title XIX of the Crime Control Act of 1990 (P.L. 101-647) reclassified anabolic steroids as Schedule III controlled substances under 21 U.S.C. § 812(c). As a result the sentencing commission added anabolic steroids to the sentencing guidelines in Amendment 369, effective November 1, 2991. See United States Sentencing Guidelines, Appendix C - Volume I, Amendment 369.

That amendment added quantities of anabolic steroids to the § 2D1.1 controlled substance sentencing table. Under Amendment 369, an offense involving 40,000 or more units of anabolic steroids was given a base offense level of 20. No empirical study of any kind was ever done to support this offense level. No empirical basis exists to treat more than 40,000 units of anabolic steroids equally to 40-60 grams of heroin, or 20-30 grams of amphetamine, or 8-12 kilograms of hashish. No study was done comparing the societal impact of the various drugs, the characteristics of those who used or sold the various drugs, or the appropriate sentences for people who sold anabolic steroids as opposed to some other controlled substance. There is nothing in the sentencing guidelines, documentation on the sentencing commission website (www.ussc.gov), or the congressional record explaining *why* a 1992 defendant possessing 40,000 units of anabolic steroids and a category II criminal history deserves 46-57 months of prison, or 33-41 if the defendant accepted responsibility.

The anabolic steroid guidelines are precisely the type of non-empirical guidelines that the Supreme Court was addressing in *Rita v. United States*, 551 U.S. 338 (2007), in holding that the advisory guideline ranges can not be presumed to be reasonable. They are the sort of guidelines the Supreme Court referred to in *Kimbrough v. United States*, 552 U.S. 85 (2007), in holding that advisory guidelines that

4

are not based on empirical data or past practice should command less weight in the sentencing process than § 3553(a) factors which are based on the facts of the case and defendant before the sentencing court . A variance from the guideline sentence is appropriate in this case because of the various mitigating factors presented, each of which is highly relevant to the various purposes of sentencing, yet virtually none of which are taken into account by the advisory, unsupported, and arbitrary guideline range.

> D. The appropriate sentence

The court has the discretion and authority to impose any sentence between simple probation and a substantial term of imprisonment, limited only by the parsimony provision; that the court must impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing. 18 U.S.C. §3553(a). Those purposes include providing just punishment, incapacitation, creating general and specific deterrence, and rehabilitating the defendant. 18 U.S.C. §3553(a)(2).

> 1. Just punishment and deterrence

Some punishment in the form of incapacitation is appropriate in this case. The biggest factor calling for incapacitation is the fact that Mr. Paolucci has a prior conviction for a similar offense. The court must still consider what type and what period of incapacitation is appropriate. The recommended guideline range of roughly 3 years is plainly excessive for this offense. The dangers involved with anabolic steroid use are far less than more serious drugs such as narcotics or street drugs. There are fewer collateral dangers of anabolic steroids such as gun violence or street crimes by addicts. Mr. Paolucci was selling to those who purported to be adults using in a safe, managed way for purposes of bodybuilding. While still dangerous, and still illegal, Mr. Paolucci's crime does not compare to the more typical drug crimes seen by this court. A six month period of incapacitation is sufficiently long to get the point across without being excessive for the nature of this crime.

The court should also consider the impact a sentence to prison would have on Mr. Paolucci individually. He is in his mid-50's. He is in poor health. Prison is likely to have a more negative impact on his health than the younger offenders typical addressed by the guidelines. He also has a delicate psyche, one that could easily be negatively affected by the stresses of a prison sentence. Sadly, Mr. Paolucci has been a danger to himself in the past when his mental illness wasn't properly

treated. His mental health difficulties can and should be considered by the court in fashioning the appropriate sentence.

The requested sentence of a period of home confinement constitutes a means of incapacitation and deterrence more appropriate for Mr. Paolucci. Home confinement is difficult and a true deprivation of the defendant's liberty, but saves a more vulnerable defendant such as Mr. Paolucci from some of the rigors of prison life.

While some punishment and deterrence are needed in this case they can be achieved by a period of supervised release with a condition of six month period of home detention. This period of home detention will significantly restrict Mr. Paolucci's freedom and serve as a constant reminder that he is in fact being punished. At the same time it will avoid unnecessary imprisonment and allow Mr. Paolucci to continue to receive needed mental health treatment and begin his community service.

      2. Incapacitation

Society needs no protection from Mr. Paolucci. He is not a danger to the community. Society is better off with Mr. Paolucci as a free man getting appropriate mental health treatment, performing community service, and under the supervision of United States Probation.

      3. Rehabilitation

Rehabilitation is an essential part of the sentencing formula and in this case points strongly toward a sentence of no imprisonment. Rehabilitation generally refers to giving a defendant the assistance and tools he needs to put him in a position to lead a lawful, productive life. Mr. Paolucci is already ready to do so. He simply needs continued mental health treatment. A non-prison sentence would directly help Mr. Paolucci in his rehabilitation, whereas a sentence of imprisonment is more likely to cause a setback.

In addition, counsel also requests that Mr. Paolucci be required to perform community service. This is appropriate not only as a way for Mr. Paolucci to make amends to society, but also because of the positive impact performing community service will likely have on his mental health. Community service in this case would serve as punishment, restitution, and an opportunity for rehabilitation. It is an ideal means to address all of the 3553(a) factors without costing Mr. Paolucci his freedom or society it's tax dollars.

A fair consideration of the legitimate ends of sentencing, in light of the characteristics of this defendant as presented in the PSR, should lead this court to the conclusion that a six month period of home detention and 300 hours of community service would better serve the overall interests of sentencing. The requested sentence is appropriate, within the Court's discretion, and does substantial justice in this case.

>Respectfully submitted
>Edmond Paolucci
>By his attorney,
>
>/s/ Olin Thompson
>Assistant Federal Defender
>10 Weybosset St., Ste. 300
>Providence, RI 02903
>(401) 528-4281
>FAX 528-4285
>olin_thompson@fd.org

## CERTIFICATION

I hereby certify that a copy of the within was delivered by electronic notification to Heather McLoughlin United States Probation Officer, and Richard Myrus, Assistant United States Attorney, on March 29, 2013

>/s/ Olin Thompson