IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Cr. No.: 12-149-M |
| v. ) | |
| ) | |
| EDMOND PAOLUCCI ) | |

**GOVERNMENT'S POSITION ON SENTENCING**

The United States of America submits this sentencing memorandum to assist the Court in determining the defendant's sentence. The government has reviewed the presentence report ("PSR") and has no material objections. The government agrees that the Guidelines range is accurately calculated as 33 to 41 months of incarceration and respectfully requests a sentence at the low end of that range, followed by 3 years of supervised release. A substantial period of incarceration is warranted because the defendant served as a U.S. operative for an international drug distribution ring that was responsible for the large-scale manufacture and sale of prescription drugs, including injectable steroids. In addition, the defendant was previously convicted in 2006 of possession with intent to deliver anabolic steroids.

**I.       The Defendant's Role in the Conspiracy to Distribute Steroids**

From at least as early as November 2009 until his arrest in November 2011, the defendant served a U.S. confederate of an Israeli-based, drug trafficking ring that was also responsible for the manufacture and sale of prescription drugs, including anabolic steroids, in the United States and elsewhere. From his Israeli co-conspirators, the defendant received various misbranded prescription drugs as well as bulk quantities of pills and injectable steroids in 650 ml. jugs, which were smuggled into the United States for repackaging and distribution to retail customers. These shipments originated in various countries, including Israel, Turkey and Bulgaria. Through his

co-conspirators in Rhode Island, the defendant used an underground laboratory to repackage the bulk steroids into retail-size pill packets and 10 ml vials that he then dispensed via U.S. mail to customers who had made purchases on-line through websites operated by the defendant and his Israeli co-conspirators.  (PSR at 5.)

In addition, between November 2009 and November 2011, the defendant wired thousands of dollars in proceeds from the illegal sale of these steroids and other drugs to his co-conspirators in Israel and elsewhere.  (Id.)

## II.   Applicable Sentencing Law

The Sentencing Guidelines promulgated by the Sentencing Commission are advisory, although courts "must consult those Guidelines and take them into account when sentencing." United States v. Booker, 543 U.S. 220, 264 (2005).  A court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter."  Nelson v. United States, 555 U.S. 350, 351 (2009).  In "the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'"  Kimbrough v. United States, 552 U.S. 85, 109 (2007) (quoting Rita v. United States, 551 U.S. 338, 350 (2007)).

The First Circuit instructed in U.S. v. Martin:

> the fact that a sentencing court possesses the raw power to deviate from the guidelines does not mean that it can (or should) do so casually . . . . Moreover, a certain 'sliding scale' effect lurks in the penumbra of modern federal sentencing law; the guidelines are the starting point for the fashioning of an individualized sentence, so a major deviation from them must be supported by a more significant justification than a minor one.

520 F.3d 87, 91 (1st Cir. 2008) (internal quotations omitted).[1]

The overarching statutory charge for a district court is to "impose a sentence sufficient, but not greater than necessary." 18 U.S.C. 3553(a). Toward that end, Section 3553(a)(2) instructs that the sentence should: (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (2) adequately deter criminal conduct; (3) protect the public from further crimes by the defendant; and (4) provide the defendant with needed education/vocational training, and medical care.

### III. A Sentence at the Low End of the Guidelines Range is Warranted

A sentence at the low end of the Guidelines range is appropriate and, indeed, warranted in light of the 3553(a) factors. Specifically, a sentence of 33 months will reflect the seriousness of the defendant's offense and hopefully provide a meaningful deterrent.

#### 1. Nature and Circumstances of the Offense.

The defendant was a central figure in a sophisticated, long-running, international conspiracy to distribute anabolic steroids, a Schedule III controlled substance, via the internet. In short, the defendant was responsible for dispensing thousands of doses of untested,

---

[1] The defendant argues that the applicable Guidelines range should be disregarded because the sentencing table for anabolic steroids under section 2D1.1 is not based on empirical data. Several circuits, however, have already rejected this critique with respect to sentencing in child pornography cases. See United States v. Pugh, 515 F.3d 1179, 1201 n.15 (11th Cir. 2008) (rejecting assertion that the child pornography guidelines are fatally infirm because they are not supported by empirical data); see also United States v. Stone, 575 F.3d 83, 93 (1st Cir. 2009) ("Even though a guideline is affected by congressional adjustment, a sentencing court may rely on it."). Moreover, as explained in the U. S. Sentencing Commission's 2006 Steroids Report, under the Guidelines' unit-based approach to Schedule III controlled substances, Guidelines ranges for steroid distribution are consistent with other Schedule III drugs. (2006 Steroids Report (excerpts) at 3, attached as Exh. 1.) Indeed, "more steroids are required to achieve sentences comparable to other Schedule III substances. That is, if in pill form, 50 times more steroid pills are needed to produce a penalty equal to other Schedule III pills and if in liquid form, 20 times the volume of liquid is required to produce the equivalent penalty of other Schedule III liquid substances." Id.

unapproved drugs to internet customers throughout the United States without any legitimate medical purpose. (PSR, ¶ 10.)Moreover, during the period at issue, the defendant had no legitimate employment. (PSR, ¶¶ 60-61.)  Rather, it appears that he devoted himself to running this steroid distribution operation, which included traveling to numerous parcel service locations throughout New England to receive and send packages containing steroids. (PSR, ¶ 10.)

While the defendant now seeks to trivialize the dangers of steroid abuse, the fact is that Congress passed the Anabolic Steroid Control Act in 2004 to, among other things, "address the wide spread use of steroids and steroid precursors by college, high school, and even middle school students." H.R. REP. 108-461(I), 108TH Cong., 2ND Sess. 2004, 2004 WL 730533, at *4-5.  Although the defendant now suggests that steroid abuse is relatively benign, the House Report issued in conjunction with the Act came to a different conclusion:

> [s]ome of the consequences of long-term use of steroids include aggression, extreme mood swings, liver tumors, liver cancer, kidney tumors, jaundice, heart attacks, high blood pressure, high cholesterol, severe acne, and trembling.  Other side effects may be gender specific such as breast development in men, reduced sperm count, infertility, increased risk of prostate cancer, male-pattern baldness in women, changes in, or cessation of, the menstrual cycle, facial hair growth or deepening of the voice in women.  In addition, those who inject steroids, as opposed to oral ingestion or topical use, run the risk of contracting or transmitting HIV or hepatitis.

Id.

In addition to distributing controlled substances, the defendant laundered the proceeds of his steroid distribution by sending funds to various co-conspirators in Israel and elsewhere. Although the defendant ignores this aspect of his conduct, it further demonstrates the elaborate nature of his drug trafficking scheme and the defendant's extensive involvement in it.

### 2. Adequate Deterrence

In 2005, law enforcement agents intercepted a package from Thailand that contained 1000 units of anabolic steroids and was addressed to the defendant. (PSR, ¶ 39.) Further investigation at that time revealed that four additional packages were also awaiting delivery to the defendant. (Id.) In that case, the defendant was convicted of possession with intent to distribute steroids and received a three-year suspended sentence. Plainly, the defendant's previous prosecution for steroid trafficking did not deter him. Indeed, the lenient sentence that he received appears to have emboldened him to embark on this most recent scheme. A meaningful term of incarceration is appropriate now to protect the public and to impress upon the defendant that steroid trafficking is a serious offence that the Court will not tolerate.

## V.   Conclusion

For the reasons above, the government respectfully believes that a sentence of 33 months is appropriate.

Respectfully submitted,

UNITED STATES OF AMERICA

By Its Attorneys,

PETER F. NERONHA
United States Attorney


/s/ RICHARD MYRUS
RICHARD MYRUS
Assistant U. S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
richard.myrus@usdoj.gov

**CERTIFICATE OF SERVICE**

       On this 5th day of April, 2012, I caused the within Government's Position on Sentencing to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic Notification:

Olin W. Thompson, Esq.
Federal Defender's Office
10 Weybosset St.
Suite 300
Providence, RI 02903

    /s/ RICHARD MYRUS
    RICHARD MYRUS
    Assistant U. S. Attorney
    U.S. Attorney's Office
    50 Kennedy Plaza, 8th Floor
    Providence, RI 02903
    Tel (401) 709-5000
    richard.myrus@usdoj.gov